AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br><br>A blue TCL phone with a cracked screen, model T601DL and IMEI 015924000350623 | Case No. 22-4046 MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A-2.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before    2/28/2022    *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____

*Camille D. Bibles*
Digitally signed by Camille D. Bibles
Date: 2022.02.14 22:48:41 -07'00'
_____
*Judge's signature*

City and state: <u>Flagstaff, Arizona</u>

<u>Honorable Camille D. Bibles, U.S. Magistrate Judge</u>
*Printed name and title*

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br><br>A blue TCL phone with a cracked screen, model T601DL and IMEI 015924000350623 | Case No. 22-4046 MB |

## ELECTRONIC APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A-2**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 111 | Assault on a Federal Officer |
| 18 U.S.C. § 924(c) | Using, Carrying, Brandishing, and Discharging a Firearm During a Crime of Violence |

The application is based on these facts:

**See attached Affidavit of Special Agent Timothy Hornbeck**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Benjamin Goldberg

_____
*Applicant's Signature*

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Special Agent Timothy Hornbeck, FBI
*Printed name and title*

Executed on: 2/14/22

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2022.02.14 22:49:47 -07'00'

*Judge's signature*

Sworn telephonically before me

Honorable Camille D. Bibles, U.S. Magistrate Judge
*Printed name and title*

Date: _____

City and state: Flagstaff, Arizona

## ATTACHMENT A-2

*Property to be searched*

The property to be searched is a blue TCL phone with a cracked screen, model T601DL and IMEI 015924000350623 ("SUBJECT CELLULAR TELEPHONE 2"). SUBJECT CELLULAR TELEPHONE 2 is currently located at Federal Bureau of Investigation Evidence Control Room in Flagstaff, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.





## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE that relate to violations of 18 U.S.C. § 111, Assault of a Federal Officer, and 18 U.S.C. § 924 (c) Using, Carrying, Brandishing, and Discharging a Firearm During a Crime of Violence, including:

   a. all bank records, checks, credit card bills, account information, or other financial records;

   b. all information regarding the receipt, transfer, possession, transportation, or use of firearm(s) or ammunition;

   c. any information recording schedule or travel;

   d. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   e. contextual information necessary to understand the above evidence;

   f. evidence indicating how and when the cellular telephone was accessed or used to determine the chronological context of the cellular telephone access, use, and events relating to crime under investigation and to the cellular telephone user.

2. Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 2 showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications;

subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

2

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Timothy M. Hornbeck, Special Agent of the Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby deposes and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine:

- A black cellphone with a sticker of a skull wearing a cowboy hat ("SUBJECT CELLULAR TELEPHONE 1"), further described in Attachment A-1;
- A blue TCL phone with a cracked screen, model T601DL and IMEI 015924000350623 ("SUBJECT CELLULAR TELEPHONE 2"), further described in Attachment A-2; and
- A black Verizon ZTE phone, model Z3153V, IMEI 869942045462853, and serial number 320114243575 ("SUBJECT CELLULAR TELEPHONE 3"), further described in Attachment A-3 (collectively the "SUBJECT CELLULAR TELEPHONES")

And in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2. Your affiant, Timothy M. Hornbeck, is An FBI Special Agent ("SA"), and is currently assigned to the FBI's Flagstaff, Arizona Resident Agency. Your affiant has been employed with the FBI since September 2019 and is assigned to investigate violent crimes on Indian Reservations in Northern Arizona. Your affiant has received training from the FBI regarding the investigation of violent crime and crimes involving the use of electronic communications.

3. The statements contained in this Affidavit are based on information derived

from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information provided by a confidential source; analysis of public records; controlled purchases of drugs; analysis of social media information; analysis of telephone records; intercepted communications; and analysis of financial records.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 111, Assault of a Federal Officer, and 18 U.S.C. § 924 (c) Using, Carrying, Brandishing, and Discharging a Firearm During a Crime of Violence, have been committed by VALENTIN RODRIGUEZ ("RODRIGUEZ") who used a firearm to fire upon Yavapai Apache police officers TB and PB in Camp Verde, Arizona on the Yavapai-Apache Indian Reservation. TB and PB are Special Law Enforcement Commission ("SLEC") certified police officers and are therefore authorized to conduct investigations and exercise authority delegated by virtue of 25 U.S.C. § 2803. Both TB and PB currently hold active SLEC cards from the Bureau of Indian Affairs. There is probable cause to search the information described in Attachments A-1, A-2, and A-3 for evidence of these crimes further described in Attachment B.

5. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## BASIS FOR PROBABLE CAUSE

6. On February 9, 2022, Yavapai-Apache police were contacted after a witness, D.L., reported hearing gunshots in the Tunli neighborhood near the north end of East Cherry Creek Road near the Verde river. The call was dispatched at approximately 7:18 p.m. and Officers TB and PB responded.

7.  According to D.L., she first heard gunshots while in her residence. She stepped outside, did not see anything, and then returned to her residence. When she heard gunshots again, she contacted the police to report the gunfire. After one of her children mentioned Officer PB was outside near D.L.'s residence, D.L. left her residence and observed Yavapai-Apache police officers shouting commands to an adult male who was standing near a light-colored sedan down the hill from where D.L. lived. Law enforcement officers later determined D.L. was standing approximately 500 yards away, looking down from an elevated position.

8.  D.L. thought she heard the officers tell the individual to drop his gun. D.L. heard the individual say something about being left alone. D.L. observed the individual walk away from the vehicle and fire his gun twice toward Officers TB and PB. D.L. saw the officers return fire, saw a flashlight drop to the ground, and heard more gunfire. D.L. saw the individual running in a northern direction upstream along the Verde river.

9.  Officer PB was hit by gunfire and transported to a hospital, where he underwent surgery.

10. Law enforcement officers later learned that D.L., from her vantage point above the incident, also saw a female running toward the officers and the individual during the course of the incident. D.L. knew this female to be D.R., RODRIGUEZ's daughter. D.L. thought that D.R. appeared to be in some distress.

11. According to the Yavapai-Apache police, the registered owners of the Nissan Altima were contacted and they told police that they had sold the vehicle to Valentin RODRIGUEZ approximately 3 or 4 weeks prior to the incident.

12. Law enforcement officers also were able to see a package located in plain view inside the vehicle. The package displayed an address matching RODRIGUEZ's address on his driver's license.

13. During a canvas of the immediate area by the FBI's Evidence Response Team, FBI officers located the light-colored sedan, later found to be a Nissan Altima, that the individual was standing near when TB and PB confronted him. Officers also found a semi-automatic rifle approximately 30 yards from the vehicle. The rifle was observed to have a red or brown substance located near the end of the receiver of this firearm. Based on training and experience, law enforcement officers believed the substance to be blood. Officers also observed a cell phone, SUBJECT CELLULAR TELEPHONE 2, on the ground, with what appeared to be a bullet hole through the phone. No testing has been done on SUBJECT CELLULAR TELEPHONE 2 to determine the source of damage. SUBJECT CELLULAR TELEPHONE 2 was collected as evidence.

14. FBI agents interviewed D.R., RODRIGUEZ's daughter. D.R. was home alone on February 9 when she received a call from RODRIGUEZ, who stated he was down by the river where the two of them could throw rocks. D.R. believed RODRIGUEZ was likely driving a grey sedan he had recently purchased. While on the phone, D.R. heard RODRIGUEZ reference seeing two cops with guns. She then heard multiple gunshots through the phone, before the call ended.

15. After the call ended, D.R. ran down to the river where she saw the grey sedan her father had purchased, along with two police vehicles. She also saw a police officer helping another officer into one of the police vehicles.

16. D.R. told FBI agents that she had seen her father with a firearm in the past. She also provided agents with a description of her phone and said she had lost her phone the night of the incident.

17. Law enforcement agents also interviewed C.R., RODRIGUEZ's brother. C.R. told law enforcement that RODRIGUEZ often used his daughter's phone and that he had previously contacted RODRIGUEZ using the number associated with D.R.'s phone.

4

18. That night, law enforcement officers obtained an emergency order to locate the whereabouts of D.R.'s phone. Utilizing the data provided by the emergency order, your Affiant was able to determine the phone's location. The phone, SUBJECT CELLULAR TELEPHONE 1 was located approximately 60 yards from the location where the gunfire incident occurred. The phone matched the description that D.R. gave. SUBJECT CELLULAR TELEPHONE 1 was taken into evidence.

19. On February 10, 2022, the Honorable Camille D. Bibles, United States Magistrate Judge for the District of Arizona, authorized a search warrant for the Nissan Altima (Case No. 22-4039MB).

20. That same day, agents executed the warrant on the Nissan Altima. Inside, agents found a traffic ticket made out to RODRIGUEZ, as well as a scope for a firearm. Agents also found SUBJECT CELLULAR TELEPHONE 3.

21. Agents also canvassed the area surrounding the Nissan Altima. In addition to the rifle, they also found a large number of firearm rounds and three firearm magazines.

22. The SUBJECT CELLULAR TELEPHONES were collected as evidence and are currently stored in the FBI Flagstaff Resident Agency Evidence Control Room and described in Attachments A-1, A-2, and A-3.

23. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONES have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONES first came into the possession of the Federal Bureau of Investigation.

## ITEMS TO BE SEIZED

24. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONES.

5

25. Based on my training, education, and experience, I know that individuals often use their phones to communicate and that phones contain information confirming or providing an individual's location. Phones can also offer evidence of a state of mind of an individual. Based on the above, your Affiant believes that all three SUBJECT CELLULAR TELEPHONES will contain evidence directly related to violations of 18 U.S.C. §§ 111 and 924(c).

### DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

1. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONES. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

2. *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONES for at least the following reasons:

    a. Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

    b. Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited

6

to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

      c.      Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

      d.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

      3.      *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONES because:

7

      a.    Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.    As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such

8

file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

   c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

   d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

9

Case 3:22-mb-04046-CDB   Document 1   Filed 02/15/22   Page 16 of 16

4.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONES, including the use of computer-assisted scans.

5.  *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

6.  Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 18 U.S.C. § 111, Assault of a Federal Officer, and 18 U.S.C. § 924 (c) Using, Carrying, Brandishing, and Discharging a Firearm During a Crime of Violence, are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONES further described in Attachments A-1, A-2, and A-3.

_____
Special Agent Timothy Hornbeck
Federal Bureau of Investigation

Subscribed and sworn telephonically before me this 14th day of February, 2022.

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2022.02.14 22:49:11 -07'00'

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge

10